The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
******************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. At all times relevant to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Defendant has been a duly qualified self-insured employer under the Workers' Compensation Act since 1 October 1993.
3. Since 1 August 1993 the employee-employer relationship has existed between plaintiff-employee and defendant-employer.
4. The parties stipulated that the decision of the Industrial Commission at this time shall be limited to the compensation, if any, to which plaintiff is entitled through 23 October 1996.
******************
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Defendant operates the Karastan rug plant in Eden where plaintiff is employed presently as an auto set machine operator. Defendant acquired this plant from Fieldcrest Cannon, Inc. on 1 August 1993. Plaintiff has been continuously employed by Fieldcrest Cannon and by defendant-employer since October 1973.
2. Plaintiff worked as a twister tender for Fieldcrest Cannon and for defendant from 1974 until 21 March 1994. Plaintiff thereafter worked for defendant-employer as an auto set machine operator.
3. Plaintiff's work as a twister tender until 21 March 1994 required the use of her hands in doffing, creeling, and repairing end breaks. This required plaintiff to use her hands to pull tangled yarn off bobbins, cut yarn with scissors, tie yarn in, remove and replace supply packages of yarn weighing ten to fifteen pounds, fill oil containers, and push buggies and trucks.
4. Following 21 March 1994 plaintiff's duties as an auto set machine operator also required the use of both of her hands.
5. Plaintiff experienced pain and numbness in both of her hands by 1994 and this pain gradually worsened.
6. Plaintiff was first seen in Dr. Wayne Keeling's office on 25 January 1995. Dr. Keeling is a board certified orthopedic surgeon in Rockingham County. His practice includes the treatment of upper extremity and hand conditions. Plaintiff was complaining of numbness and tingling in both her hands, particularly at night in the middle three fingers. The pain was worse in the right hand and was aggravated by her duties at work. Dr. Keeling's diagnosed bilateral carpal tunnel syndrome and prescribed anti-inflammatory medication and fitted splints on both hands.
7. Plaintiff was next referred to Dr. James Adelman, a neurologist, for nerve conduction studies. These were completed on 26 January 1995 and were interpreted as "borderline" and "compatible with possible mild right carpal tunnel syndrome." A subsequent study on 20 March 1996 was virtually identical to the first study.
8. Dr. Keeling recommended anti-inflammatory medication when plaintiff returned on 1 February 1995. He did not recommend surgery, and he continued to treat plaintiff for her hand problems.
9. Defendant arranged for an independent medical evaluation by Dr. Robert Sypher on 18 October 1995. Dr. Sypher is an orthopedic surgeon who limits his practice to upper extremity conditions. Dr. Sypher felt his examination did not present a "black and white picture of carpal tunnel syndrome." He thus referred plaintiff for laboratory studies to screen for other problems. At a follow-up visit on 25 November 1995 Dr. Sypher stated that plaintiff may have borderline carpal tunnel syndrome. He also concurred with Dr. Keeling that plaintiff's nerve conduction studies and exam so far do not necessitate surgery.
10. The laboratory studies completed at Dr. Sypher's request documented a mild hypothyroid state. Dr. Sypher believes that it is quite possible this condition contributed to the onset of plaintiff's complaints and that it is likely that she had an impairment from a lot of different reasons and "it seems improper to hang it all on her job."
11. When plaintiff was seen by Dr. Keeling in July 1996, she was having increasing pain and tenderness in both her hands. Dr. Keeling removed plaintiff from work on a leave of absence for two and one-half to three months. Plaintiff was out of work from 12 August 1996 until 23 October 1996.
12. Dr. Keeling believes plaintiff's duties both as a twister tender and as an auto set machine operator contributed significantly to the development of her bilateral carpal tunnel syndrome. Repetitive work activity is a very causative factor for carpal tunnel syndrome and hypothyroidism also places a patient at a risk for this condition. Both may be significant factors, but plaintiff's work activity is more of a causative factor for her carpal tunnel symptoms and syndrome.
13. Plaintiff's work as a twister tender and as an auto set machine operator placed her at a greater risk than the general public outside this employment of developing carpal tunnel syndrome.
14. Plaintiff's use of her hands in performing the duties of a twister tender and of an auto set machine operator after 1 August 1993 significantly contributed to plaintiff's bilateral carpal tunnel syndrome.
15. As a result of plaintiff's bilateral carpal tunnel syndrome plaintiff was unable to earn wages in her employment with defendant or in any other employment from 12 August 1996 through 23 October 1996.
16. Medical treatment for plaintiff's bilateral carpal tunnel syndrome is necessary to provide relief and lessen plaintiff's disability from this condition.
17. Plaintiff's average weekly wage is $362.40, which yields a compensation rate of $241.60 per week.
******************
Based on findings of fact and conclusions of law, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. As a result of her job duties as a twister tender and as an auto set machine operator, plaintiff developed bilateral carpal tunnel syndrome which is due to causes and conditions characteristic of and peculiar to her employment in these positions and which is not an ordinary disease of life to which the general public is equally exposed outside of this employment. Plaintiff, therefore, has contracted an occupational disease. N.C. Gen. Stat. § 97-53(13).
2. Plaintiff was last injuriously exposed to the hazards of her bilateral carpal tunnel syndrome in her employment by defendant, Mohawk Industries, Inc. N.C. Gen. Stat. § 97-57.
3. As a result of plaintiff's bilateral carpal tunnel syndrome, plaintiff is entitled to compensation for temporary total disability at the rate of $241.60 per week from 12 August 1996 through 23 October 1996. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to payment of all medical expenses by defendant as a result of her occupational disease, including the expense of Dr. Keeling's treatment, for so long as such examinations, evaluations and treatment may be reasonably required to effect a cure, give relief, or tends to lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
******************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant shall pay compensation to plaintiff at the rate of $241.60 per week from 12 August 1996 through 23 October 1996 on account of her temporary total disability. This compensation has accrued and shall be paid in a lump sum subject to an attorney's fee provided below.
2. Defendant shall pay all related medical expenses for so long as such treatment may reasonably be required to effect a cure, give relief, and tends to lessen plaintiff's period of disability.
3. A reasonable attorney's fee in the amount of twenty-five percent of the compensation awarded plaintiff in Paragraph 1 of this AWARD is hereby approved for plaintiff's counsel. This fee shall be deducted from the compensation awarded to plaintiff and paid directly to counsel for plaintiff.
4. Defendant shall pay the costs.
This the 15th of September 1997.
 S/ ___________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ___________________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ___________________________ DOUGLAS E. BERGER DEPUTY COMMISSIONER